**NOT FOR PUBLICATION**                           **CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| TEAMSTERS LOCAL 97, | Civil Case No. 13-5289 |
| | (FSH) (JBC) |
| Plaintiff, | |
| | **OPINION & ORDER** |
| v. | |
| | June 19, 2014 |
| TEMCO SERVICE INDUSTRIES, INC., | |
| Defendant. | |

**HOCHBERG, District Judge:**

### I. BACKGROUND[1]

Plaintiff Teamsters Local 97 seeks to vacate an Arbitrator's finding of no liability as to Defendant Temco, which employed members of Plaintiff's Union. The parties dispute whether the Arbitrator acted within his authority in determining that the Union had failed to establish an enforceable existing past practice, to wit: that Union employees were customarily paid wages even though the employer canceled the workday due to severe weather.

Members of Plaintiff Teamsters were hired by Defendant Temco to work at Seton Hall University in 2012. On October 29 and 30 the worksite was closed because of Hurricane Sandy, and 39 employees were told not to report to work. Temco did not pay these employees for the two days that the worksite was closed. Six employees reported to work on those days. The

---

[1] Unless otherwise noted, the facts are taken from the parties' statements of undisputed facts. (Docket Nos. 10-5, 17).

1

employees that reported to work were paid their regular salary, but not premium pay. Plaintiff contends that it was Temco's past existing practice to pay employees for any day cancelled due to severe weather, and to pay employees who worked during severe weather at premium rates.

It is undisputed that there is no explicit provision of the Collective Bargaining Agreement ("CBA") between the Teamsters and Temco requiring that Union employees be paid for days where they are told not to report to work due to severe weather. Instead, Plaintiff filed a grievance arguing that Article XIII of the CBA—which requires that existing "conditions of employment" be continued—obligates Temco to pay employees under such circumstances.

Plaintiff submitted the grievance to arbitration pursuant to the CBA and Arbitrator Lawrence Henderson heard two days of testimony on the issue of the existence of this disputed past existing practice. A single Union shop steward testified for Plaintiff that Temco had, for the past twenty years, "always" paid employees when the worksite was closed due to severe weather. Apart from identifying one instance that did not involve weather, September 11, 2001, however, the witness could not specify any other dates or circumstances of the alleged practice. Defendant Temco's Director of Employee and Labor Relations testified for Defendant, stating that he knew of no practice by which employees were paid when the worksite was closed. On July 5, 2013, Arbitrator Henderson issued an Opinion & Award, finding that Plaintiff Teamsters failed to establish sufficient evidence of the disputed past existing practice. Consequently, he found Temco not liable for the Teamsters employees' wages.

Plaintiff then filed a Complaint in this Court on September 4, 2013, pursuant to the Labor Management Relations Act, 29 U.S.C. § 185, seeking to challenge the Arbitrator's determination as purportedly rendered "in excess of the powers and authority granted to the Arbitrator," in

violation of 9 U.S.C. § 10(a)(4).  Defendant moved to confirm the arbitration award and Plaintiff moved for summary judgment seeking to vacate the award.

## II. STANDARD

"District courts have very little authority to upset arbitrators' awards."  *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995).  Review is "extremely deferential," and vacatur is appropriate only in "exceedingly narrow" circumstances. *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003).  The grounds for vacating an arbitration award are set forth in 9 U.S.C. § 10:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

Plaintiff seeks relief under 9 U.S.C. § 10(a)(4), arguing that the arbitrator exceeded his authority. "A party seeking relief under that provision bears a heavy burden. It is not enough to show that the arbitrator committed an error—or even a serious error. . . Only if the arbitrator acts outside the scope of his contractually delegated authority—issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract—may a court overturn his determination." *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013) (internal quotation marks and alterations omitted). An arbitrator exceeds his authority where he decides issues not submitted to him or grants relief in a form that cannot be rationally

derived from the parties' agreement. *See Mut. Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co.*, 868 F.2d 52, 56 (3d Cir. 1989). On the other hand, where "it is *possible* that the arbitrator could have been interpreting the contract, his failure to apply correct contract principles is irrelevant." *Arco-Polymers, Inc. v. Local 8-74*, 671 F.2d 752, 755 (3d Cir. 1982) (emphasis added). Thus, the Court's inquiry is limited to the question of whether "the arbitrator's interpretation is in any rational way derived from the collective bargaining agreement." *Pa. Power Co. v. Local Union No. 272, Intern. Broth. of Elec. Workers, AFL-CIO*, 276 F.3d 174, 179 (3d Cir. 2001). "[C]onvincing a court of an arbitrator's error—even his grave error—is not enough. So long as the arbitrator was 'arguably construing' the contract . . . a court may not correct his mistakes under § 10(a)(4)." *Oxford Health Plans*, 133 S. Ct. at 2070.

### III. DISCUSSION

Here, Plaintiff makes two arguments under Section 10(a)(4): (a) that the Arbitrator purportedly exceeded his authority by looking beyond the text of the CBA; and (b) that the Arbitrator purportedly imported a new term into CBA.[2]

**(a) Arbitrator's Alleged Reference Beyond the Terms of the CBA**

Plaintiff asserts that the Arbitrator decided issues beyond those submitted to him, purportedly "stray[ing] from this limited grant of power [when] he based his Award on reference beyond the agreement." (Pl.'s Br. in Supp. of Mot. for Summ. J. 7, Docket No. 10-1).

---

[2] In its opposition brief Plaintiff abandoned its argument that the award should be vacated under 9 U.S.C. § 10(a)(1) for manifest disregard of principles of contract law. (Pl.'s Mem. of Law in Opp'n 7 n.2). Plaintiff asserts no other argument under Section 10(a)(1), nor identifies any "corruption, fraud, or undue means."

4

The Arbitrator began his construction of the "existing practices" clause by examining "the language in the parties' Collective Bargaining Agreement." (Pl.'s Br. Ex. A, at 4, Docket No. 10-3). Article XIII, in its entirety, states: "<u>Existing Practices</u> All conditions of employment in existence as of the effective date of this Agreement and not modified by this Agreement, shall be continued without modification." (Pl.'s Br. Ex. B, at 8, Docket No. 10-3). The Arbitrator noted that "[n]o examples of such conditions of employment are listed in the agreement" and that "inquiry beyond the agreement may be appropriate" where the language is ambiguous. (Pl.'s Br. Ex. A, at 4). Absent examples of "conditions of employment," other applicable clauses, or an explicit definition, the Arbitrator found that "reference beyond the agreement is appropriate to decide the matter." (*Id.*). To determine whether payment of wages for a workday cancelled due to severe weather was a "condition[] of employment" that was "in existence" at the time the CBA was approved, the Arbitrator took testimony regarding past practices in similar circumstances.

Plaintiff contends that the mere act of looking beyond the contractual terms at issue—"conditions of employment" and "existing practice"—to other provisions of the contract or examples of past practices is "prima facie proof that the Arbitrator impermissibly based his Award on 'aberrant language.'" (Pl.'s Opp'n 9, Docket No. 15). Specifically, Plaintiff argues that "in considering the plain language of Article XIII of the CBA, Arbitrator Henderson stated that '[n]o examples of such conditions of employment are listed in the agreement' and that '[n]o other contractual provision was cited in support of the grievance.' . . . The Arbitrator's reference to a lack of examples of other conditions of employment demonstrates that he exceeded his authority because no other conditions of employment were disputed by the parties." (Pl.'s Br. 10 (internal citations omitted)).

5

This argument finds no support in the law. An arbitrator is not prohibited from using analogy or context to interpret the meaning of a disputed contract term, rather he "may of course look for guidance from many sources . . . so long as it draws its essence from the collective bargaining agreement." *Newark Morning Ledger Co. v. Newark Typographical Union Local 103*, 797 F.2d 162, 165 (3d Cir. 1986); *Tanoma Min. Co. v. Local Union No. 1269, UMWA*, 896 F.2d 745, 748 (3d Cir. 1990) ("An arbitration award draws its essence from the bargaining agreement if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention.") (internal quotation marks and emphasis omitted).

Moreover, "[w]here a contractual ambiguity exists it is within the province of the arbitrator to interpret the ambiguous phrase." *Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287, 1296 (3d Cir. 1996) (affirming arbitrator's interpretation of the term "where cause exists" because it was "ambiguous"). If "the arbitrator's finding of ambiguity was rational, he was authorized to look to outside sources to decipher the parties' intent." *Giant Eagle, Inc. v. United Food & Commercial Workers Union Local 23*, 547 F. App'x 106, 109 (3d Cir. 2013) (citing *Boise Cascade Corp. v. Paper Allied–Indus., Chem. and Energy Workers, Local 7-0159*, 309 F.3d 1075, 1082-83 (8th Cir. 2002) ("federal courts routinely confirm arbitral awards where the arbitrator has looked to outside sources for guidance in giving meaning to ambiguous language.")).

Examining the Arbitrator's finding of ambiguity, the Court finds his conclusion was "rational" because the CBA contains no definition of existing "conditions of employment," nor any example of such condition. *See Suburban Transit Corp.*, 51 F.3d at 380 (affirming arbitrator's finding of ambiguity where the "CBA allow[ed] [the employer] to discipline or

discharge for 'proper cause' . . . but does not define the phrase."); *Dauphin Precision Tool, LLC v. United Steel Workers of Am., AFL-CIO, Local Union 1688-13*, *Dist. 10*, Civ. No. 06-2262, 2008 WL 822112, at *5 (M.D. Pa. Mar. 26, 2008) (affirming arbitrator's finding of contractual ambiguity in the term "absentee hours" due the lack of a definition in the contract, and upholding "arbitrator's resolution of this ambiguity [if] derived from the agreement in any rational way.") *aff'd*, 338 F. App'x 219 (3d Cir. 2009).  He was, therefore, permitted to look to outside sources.

Plaintiff offers no meaningful argument that the Arbitrator's finding of ambiguity was not "rational." Instead Plaintiff asserts that the Arbitrator failed to sufficiently justify his finding: "no explanation of why the absence of such examples constitutes ambiguity is offered. . . Indeed, it is unclear why the Arbitrator feels the language of Article XIII is unclear." (Pl.'s Br. 13).  But "[a]n arbitrator is not required to list his reasons for the award, nor should an ambiguity in his opinion be seized upon to support an inference that he exceeded his authority." *NF&M Corp. v. United Steelworkers of Am.*, 524 F.2d 756, 759 (3d Cir. 1975). Inexplicably, Plaintiffs fail to state how the Arbitrator should have determined whether the alleged existing "condition[] of employment"—payment of wages for workdays cancelled due to weather—fell within the disputed term's scope without resorting to extrinsic evidence. Nor does Plaintiff point to any specific extrinsic evidence, which the Arbitrator considered, that it finds objectionable, arguing instead that even a *search* beyond the agreement constitutes error. This is insufficient. *See Brentwood Med. Associates v. United Mine Workers of Am.*, 396 F.3d 237, 242-43 (3d Cir. 2005) (where arbitrator quoted a standard from the CBA that, in fact, did not exist, reliance on such "aberrant language" was "harmless, since he would have arrived at the conclusion he reached here, even absent the discussion of the aberrant language.").

The Court's review of whether the Arbitrator exceeded his authority is limited to whether he was "arguably construing" the contract, *Oxford Health Plans*, 133 S. Ct. at 2070. Here, the Arbitrator appropriately discharged his obligation to construe a disputed term of the Agreement, and his interpretation "draws its essence from the collective bargaining agreement."

**(b) Arbitrator's Alleged Creation of a New Contract Term**

Plaintiff contends that the Arbitrator exceeded his powers by purportedly "creat[ing] a new term of the CBA," specifically: that "knowledge of a past practice on the part of Temco's senior management personnel" is necessary to enforce a past existing practice. (Pl.'s Br. in Supp. of Mot. for Summ. J. 8, Docket No. 10-1).

In determining whether the payment of wages for cancelled workdays was a past existing "condition[] of employment," the Arbitrator recited testimony from Plaintiff's witness, who claimed that Defendant "always" engaged in the practice, and Defendant Temco's witness, a member of management, who claimed that he had never heard of such a practice. In his Opinion & Award, the Arbitrator cited a principle for determining the existence of "enforceable past practices," that such practice must be: "(1) unequivocal; (2) clearly enunciated and acted upon; (3) readily ascertainable over a reasonable period of time as a fixed, and established practice accepted by both parties." (Pl.'s Br., Ex. A, at 5, Docket No. 10-3 (citing Frank Elkouri & Edna Asper Elkouri, *How Arbitration Works* 608 (6th ed.)). Next, the Arbitrator noted that Plaintiff's witness, despite claiming that "employees in such situations were always paid when the University was closed for weather-related reasons," "could not remember the dates or other details." (Pl.'s Br., Ex. A, at 6). Such details, the Arbitrator determined, are "crucial to

8

determining how clearly and consistently over a reasonable period of time" the practice had been established. (*Id.*). Finally, he determined that "[t]he record in this case is not sufficient to warrant a finding of an enforceable past practice between the parties." (*Id.*, at 5). Thus, the Arbitrator necessarily concluded that Plaintiff's witness's assertion that Temco "always" paid wages when workdays were cancelled, unsupported by specific examples or circumstances, was not probative of a "clear" and "readily ascertainable" past existing practice; and that testimony from a manager that "he was not aware that employees were paid" under such circumstances, "despite having access to company records," undercut Plaintiff's assertion of an existing practice.

The Arbitrator plainly did not create a new term of the CBA—that "the lack of knowledge of a past practice on the part of Temco's senior management personnel equated to the non-existence of a past practice." (Pl.'s Br. 8). Instead, the Arbitrator found that there was insufficient evidence of *any* past practice of paying employees for workdays cancelled due to severe weather. The Arbitrator did not read a new term into the contract, but merely interpreted the contract term "conditions of employment in existence"—as he was required to do by the CBA. (*See* Pl.'s Br., Ex. B, Article IX ("Disputes arising out of application or interpretation of any of the provisions of the Agreement shall be" decided by binding arbitration)). An arbitrator does not act in excess of his authority by interpreting an ambiguous contract term. *See United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 380 (3d Cir. 1995) ("the arbitrator did not impermissibly 'read into' the parties' agreement terms that were not there. Rather, the arbitrator simply interpreted the ambiguous term 'proper cause' in a manner unsatisfactory to [plaintiff] . . . Having decided not to define the phrase, [plaintiff] cannot escape the results of that bargain simply because the arbitrator has chosen to interpret that phrase

9

differently than [plaintiff] may have wanted."); *Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287, 1296 (3d Cir. 1996) ("[plaintiff] could have defined 'cause' more specifically in its policy . . . . It did not, and therefore may not now be heard to complain that the arbitrator lacked authority to make determinations that the company policy and the parties' agreement left open for an arbitrator's judgment.").

Plaintiff's claim that the Arbitrator created a new contract term is "simply [a] dressed-up argument[] that the arbitrator interpreted its agreement erroneously." *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 224 (3d Cir. 2012) *aff'd*, 133 S. Ct. 2064 (2013). It is evident that Plaintiff's objection to the Arbitrator's decision is based on the factual sufficiency of the evidence, a determination this Court is precluded from upsetting. *See NF & M Corp. v. United Steelworkers of Am.*, 524 F.2d 756, 759 (3d Cir.1975).

### III. CONCLUSION & ORDER

**IT IS**, this 19th day of June, 2014, hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment [Docket No. 10] is **DENIED**; and it is further

**ORDERED** that Defendant's Motion to Confirm the Arbitration Award and Enter Judgment [Docket No. 11] is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court mark this case **CLOSED**.

**IT IS SO ORDERED**

**/s/ Faith S. Hochberg**\
**Hon. Faith S. Hochberg, U.S.D.J.**